UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                                    Case No. 23-cr-113-pp

    v.

MARKITA BARNES,

        Defendant.

**ORDER OVERRULING DEFENDANT'S OBJECTIONS (DKT. NO. 30), ADOPTING JUDGE DRIES'S REPORT AND RECOMMENDATION (DKT. NO. 29) AND DENYING DEFENDANT'S MOTION TO DISMISS COUNTS ELEVEN, TWELVE AND NINETEEN (DKT. NO. 20)**

## I.    **Introduction**

On June 21, 2023, a federal grand jury returned a twenty-count indictment against defendant Markita Barnes, charging her with ten counts of health care fraud in violation of 18 U.S.C. §1347 (Counts One through Ten), two counts of aggravated identity theft in violation of 18 U.S.C. §1028A (Counts Eleven and Twelve), three counts of making false statements relating to health care matters in violation of 18 U.S.C. §1035 (Counts Thirteen, Fourteen and Fifteen), three counts of offering or paying a kickback in violation of 42 U.S.C. §1320a-7B(b)(2)(A) (Counts Sixteen, Seventeen and Eighteen), one count of obstruction of a health care fraud investigation in violation of 18 U.S.C. §1518 (Count Nineteen) and one count of money laundering in violation of 18 U.S.C. §1957 (Count Twenty). Dkt. No. 1.

1

The defendant has moved to dismiss the two counts of aggravated identity theft (Counts Eleven and Twelve) and the count of obstruction of a health care fraud investigation (Count Nineteen). Dkt. No. 20. She argues that the two counts of aggravated identity theft are no longer tenable after the U.S. Supreme Court's ruling in <u>Dubin v. United States</u>, 599 U.S. 110 (2023), which, she argues, "radically altered the use and application of 18 U.S.C. §1028A(a)(1)." Dkt. No. 20 at 6. She asserts that under <u>Dubin</u>'s "new" standard for aggravated identity theft, "the alleged identity theft must be 'at the crux of what makes the underlying offense criminal, rather than merely an ancillary feature of a billing method.'" <u>Id.</u> (citing <u>Dubin</u>, 599 U.S. at 114). The defendant maintains that her use of her clients' means of identification was ancillary to the billing process and not the crux of the alleged fraud, and that Counts Eleven and Twelve fail to state a claim under <u>Dubin</u>. <u>Id.</u>

The defendant argues that the investigation-obstruction charge is duplicitous because it is based on contrasting statements from two of her employees about different ways in which she allegedly encouraged them to lead former clients to lie to investigators. <u>Id.</u> at 12. She contends that because there are key differences between the employees' statements, the statements form the bases for two distinct offenses within a single count—and she says that if that count goes to the jury, she will be deprived of her "constitutional right to a unanimous verdict." <u>Id.</u> at 6.

Magistrate Judge Stephen C. Dries recommended that this court deny the entire motion. Dkt. No. 29. Judge Dries observed that in <u>Dubin</u>, the

Supreme Court "determined that the 'use' of another person's means of identification must be 'at the crux of what makes the conduct criminal.'" Id. at 3 (citing Dubin, 599 U.S. at 131-32). He concluded that the allegations in the aggravated identity theft counts meet the Dubin standard because the defendant is alleged to have submitted claims to Medicaid on behalf of purported clients for services the defendant never actually provided, making her "use of [the clients'] identifying information to claim otherwise . . . the crux of the alleged fraud." Id. at 4. As for the defendant's claim that Count Nineteen is duplicitous, Judge Dries found that even if the allegations in the two employee statements "are distinct enough to constitute commission of a crime by two different means, any unanimity concerns can be resolved with appropriate jury instructions and/or a special verdict form." Id. at 5. Judge Dries found that the defendant had not explained why those remedies would be inadequate, and opined that her claim that the two employees' statements "lack a common underlying motive" "delves far beyond the face of the indictment." Id.

    On May 14, 2024, the defendant timely objected to Judge Dries's report and recommendation. Dkt. No. 30. She objects to Judge Dries's finding that Counts Eleven and Twelve state a claim under Dubin, 599 U.S. 110. Id. at 1-6. And she objects to Judge Dries's finding regarding Count Nineteen, maintaining that the count is duplicitous because it contains two distinct offenses premised on two contrasting statements. Id. at 6-7.

3

3

The court overrules the defendant's objections, adopts Judge Dries's recommendation and denies the defendant's motion to dismiss Counts Eleven, Twelve and Nineteen.

## II. Legal Standards

Federal Rule of Criminal Procedure 59(b) governs a district court's referral to magistrate judges of motions to dismiss in criminal cases. Parties have fourteen days to file "specific objections" to a magistrate judge's report and recommendation on a motion to dismiss. Fed. R. Crim. P. 59(b)(2). The district judge must review *de novo* the portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. §636(b)(1). If the defendant does not make a specific objection to the magistrate judge's proposed findings and recommendations, the defendant waives the right to review. Fed. R. Crim. P. 59(b)(2). That said, even absent an objection, a district judge "retains full authority to decide whether to . . . review the magistrate[ judge]'s report," and 28 U.S.C. §636 "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." Thomas v. Arn, 474 U.S. 140, 154 (1985); see also Mathews v. Weber, 423 U.S. 261, 271 (1976) (a district judge is free to "follow . . . or wholly to ignore" a magistrate judge's recommendation, or if the district judge is not satisfied, "he may conduct the review in whole or in part anew").

4

A motion under Federal Rule of Criminal Procedure 12 tests the sufficiency of the indictment. Fed. R. Crim. P. 12(b)(3). Rule 7 requires that the indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment "that 'tracks' the words of a statute to state the elements of the crime is generally acceptable, and while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive." United States v. White, 610 F.3d 956, 958-59 (7th Cir. 2010) (citing United States v. Smith, 230 F.3d 300, 305 (7th Cir. 2000)). An indictment sufficiently alleges an offense when it "(1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." United States v. Miller, 883 F.3d 998, 1002 (7th Cir. 2018) (quoting United States v. McLeczynsky, 296 F.3d 634, 636 (7th Cir. 2002)).

The test is whether "an indictment conforms to minimal constitutional standards"—not whether the indictment "could have been framed in a more satisfactory manner." United States v. Vaughn, 722 F.3d 918, 925 (7th Cir. 2013) (quoting United States v. Hausmann, 345 F.3d 952, 955 (7th Cir. 2003)). The court reviews the indictment on practical basis and in its entirety, rather than in a "hyper-technical manner." Smith, 230 F.3d at 305 (citation and quotation marks omitted). When evaluating the sufficiency of the indictment,

the court focuses on the allegations and accepts them as true. <u>United States v.</u> <u>Moore</u>, 563 F.3d 583, 586 (7th Cir. 2009).

**III. Discussion**

    A.    <u>Counts Eleven and Twelve</u>

        1.    *Background*

            a.    The Allegations (Dkt. No. 1)

The indictment alleges that the defendant "owned and operated Here For You Prenatal Care Coordination Services LLC ('HFY')," "a Prenatal Care Coordination ('PNCC') and Childcare Coordination ('CCC') company, which billed Wisconsin Medicaid ('Medicaid') for services purportedly provided to pregnant women and mothers in Milwaukee, Wisconsin." Dkt. No. 1 at 1.

It asserts that the defendant orchestrated a scheme to defraud Medicaid in which she "advertised on Facebook, and in the community, for pregnant and new mothers to enroll in HFY's PNCC and CCC program." Dkt. No. 1 at 4. She "often induced women to enroll by offering free baby supplies such as diapers, wipes, and strollers." <u>Id.</u> After women enrolled, the defendant "instructed her employees to falsify billing submissions to Wisconsin Medicaid that knowingly misstated the duration, frequency, date and nature of the services provided." <u>Id.</u> at 4-5. The defendant "and other individuals she directed and controlled, submitted claims for payment to Medicaid based on false and fraudulent statements." <u>Id.</u> at 5. The indictment alleges that as part of her scheme, the defendant "submitted and caused to be submitted bills totaling over $2.5 million, which contained false and fraudulent statements, and which caused

6

Wisconsin Medicaid to pay her over $2.3 million to which she was not entitled."

Id.

Counts Eleven and Twelve charge the defendant with aggravated identity theft in violation of 18 U.S.C. §1028A. Dkt. No. 1 at 7-8. Count Eleven alleges that "[o]n or about January 26, 2021," the defendant

> knowingly possessed and used, without lawful authority, a means of identification of another person, specifically the name, date of birth, and Wisconsin Medicaid ID number of J.J., during and in relation to the felony offense of health care fraud, in violation of 18 U.S.C. §1347, as charged . . . in Count One, knowing that the means of identification belonged to another actual person.

Id. Count Twelve alleges that "[o]n or about March 22, 2021," the defendant

> knowingly possessed and used, without lawful authority, a means of identification of another person, specifically the name, date of birth, and Wisconsin Medicaid ID number of A.E., during and in relation to the felony offense of health care fraud, in violation of 18 U.S.C. §1347, as charged . . . in Count Three, knowing that the means of identification belonged to another actual person.

Id. at 8.

Counts One through Ten of the indictment charge the defendant with committing ten separate instances of health care fraud in violation of 18 U.S.C. §1347. Dkt. No. 1 at 5-6. All ten counts allege that the defendant,

> in connection with the delivery of and payment for health care benefits, items, and services, knowingly and willfully submitted and caused the submission of the following false and fraudulent claims on the dates below, which falsely represented the nature of the provider's interaction with the member indicated below, falsely represented that covered services were provided, and falsely represented the amount of time spent providing covered services, which caused payments in the following amounts[.]

Id. at 5. Count One, to which Count Eleven specifically refers, alleges that the defendant fraudulently billed Medicaid on "1/26/2021" for services her

7

company provided "J.J." on "10/23/2020." <u>Id.</u> Count Three, to which count twelve specifically refers, alleges that the defendant fraudulently billed Medicaid on "3/22/2021" for services her company provided "A.E." on "11/9/2021." <u>Id.</u>

b.    Judge Dries's Recommendation (Dkt. No. 29)

Judge Dries observed that in <u>Dubin</u>, the Supreme Court "determined that the 'use' of another person's means of identification must be 'at the crux of what makes the conduct criminal'" and that "[defendant] Dubin did not meet that standard because the government alleged that he overbilled Medicaid for services actually performed, such that the patient's means of identification were merely an ancillary part of the fraudulent activity." Dkt. No. 29 at 2-3 (citing <u>Dubin</u>, 599 U.S. 113, 131-32). Judge Dries summarized the defendant's motion as arguing (1) "that her clients' means of identification were merely ancillary to her billing practice," (2) that "active theft and misappropriation from that theft are required to sustain a charge [of aggravated identity theft under 18 U.S.C. §1028A]," and (3) that "she is one of the individuals that the *Dubin* ruling sought to shield from [§1028A's] mandatory minimum sentence because she has no criminal background and stands accused of fraudulently billing relatively low amounts." <u>Id.</u> at 3 (citing Dkt. Nos. 20 at 10-11; 28 at 3). He described the government's position: "the clients' identifying information was at the crux of [the defendant's] underlying fraud because 'it was the operative information [she] needed to get paid.'" <u>Id.</u> (quoting Dkt. No. 24 at 15).

8

Judge Dries explained that according to the government, the defendant "brib[ed] women with young children into sharing their means of identification by giving them baby gifts like car seats and diapers," and that the defendant "then back-billed Medicaid for services she never provided." Id. (citing Dkt. No. 1 at 3-4). He concluded that these allegations, on their face, state a claim for aggravated identity theft under Dubin. Id. He found that the indictment need not allege that the defendant posed as her clients—or stole their identities—when submitting claims because "when a provider submits a claim to Medicaid, that conduct essentially represents to Medicaid that the client authorized the provider to seek payment on the client's behalf for services rendered." Id. at 3-4. Judge Dries concluded that "[b]ecause the government contends [that the defendant's] clients never received services, [her] use of their identifying information to claim otherwise is at the crux of the alleged fraud." Id. at 4 (citing United States v. Iannelli, No. CR 22-10069, 2023 WL 7165109, at *2 (D. Mass. Oct. 31, 2023)).

2.     *The Parties' Arguments*

a.     The Defendant's Objections (Dkt. No. 30)

The defendant writes that "[a]s grounds for her objection, she hereby adopts and incorporates herein all arguments previously made by her counsel in her motion, including supporting exhibits and briefs, made to Magistrate Judge Dries." Dkt. No. 30 at 1. But Fed. R. Crim. P. 59(b) requires that parties make *specific* objections to a magistrate judge's proposed findings and recommendations, and the district judge is required to consider *de novo* only

9

those specific objections. Fed. R. Crim. P. 59(b)(2), (3). "Permitting [the defendant] to incorporate [her] original briefing into [her] objection briefing by reference defies the logic of this procedure, turning the objection process into a simple do-over before a different judge." United States v. Gaeta-Galvez, Case No. 18-CR-134, 2019 WL 989766, at *2 n.1 (E.D. Wis. Mar. 1, 2019). The court will consider only the defendant's specific objections to Judge Dries's report and recommendation and related arguments. See United States v. Charles, 476 F.3d 492, 496-97 (7th Cir. 2007) (explaining that with recommendations where "the magistrate judge . . . addresse[s] more than one issue . . . a more specific objection is necessary to alert the district court to the finding or findings the objecting party wishes to challenge").

The defendant asserts that in arguing to Judge Dries that A.E. and J.J. *never* received services, the government relied on "information outside of the four corners of the indictment." Dkt. No. 30 at 2.

The defendant says that "Counts Eleven and Twelve accuse [her] of fraudulently billing two different clients, J.J. and A.E., on . . . 10/23/20 and 11/9/20, respectively, through bills submitted on 1/26/21 and 3/22/21." Id. (citing Dkt. No. 1 at 7-8). She recounts that Counts Eleven and Twelve "cross-reference Counts One and Three, respectively, which allege that [she] 'knowingly and willfully submitted and caused the submission' of false and fraudulent claims 'which falsely represented that the covered services were provided and falsely represented the amount of time spent providing covered services.'" Id. (citing Dkt. No. 1 at 5). The defendant maintains that while the

10

government asserted in its response brief to Judge Dries that "[t]he evidence will show that [the defendant] did not render *any* services to these clients," "neither count [Count One or Count Three] explicitly alleges that services were never provided to either individual." Id. (citing Dkt. No. 24 at 3-4) (emphasis the defendant's). Rather, she argues, each count alleges that the defendant billed Medicaid for services that she did not provide on a *specific date*.

The defendant argues that "[t]he distinction between *never* providing services *at any point* and billing for services not provided on a specific date is an important one." Id. (emphasis in original). She maintains that had the clients "received services at other points in time, the alleged conduct, billing for some dates on which services were never provided among other dates on which services were provided, is exactly the conduct that the *Dubin* court determined should not give rise to aggravated identity theft charges: 'overbilling [that] was facilitated by the patient's Medicaid reimbursement number.'" Id. at 2-3 (citing Dubin, 599 U.S. at 128). The defendant asserts that "the indictment charges [her] with committing aggravated identity theft based on billing for services not provided on one date" and says that "[w]ith proper context, that one date would be a part of a larger series of submissions to Wisconsin Medicaid that purportedly bill clients for some dates on which services were never provided." Id. The defendant argues that "[t]hose allegations do not form the basis for aggravated identity theft charges." Id.

The defendant says that "[e]ven assuming the government's position that [the defendant] never, at any point, provided services to J.J. and A.E. is true,

11

Counts Eleven and Twelve should still be dismissed." at 3. She argues that the government's proffered out-of-circuit cases do not support the proposition that an individual commits aggravated identity theft when he uses an individual's means of identification to bill Medicaid for services that he never provided the individual. Id. at 3-6.

She argues that United States v. Iannelli, Case No. 22-10069-NMG, 2023 WL 7165109 (D. Mass. Oct. 31, 2023)—the case Judge Dries cited to support the application of §1028A in this context—is inapposite. Iannelli, she explains, "involved a corporate bookkeeper for an interior design firm who was accused of using the employer's signature stamp to issue unauthorized checks to herself." Id. at 3 (citing Iannelli, 2023 WL 7165109, at *1). While the bookkeeper "was entitled to use the [employer's] signature stamp to issue authorized checks to vendors, she did not have authority to use the signature stamp to issue herself a check unrelated to her due compensation." Id. at 4 (citing Iannelli, 2023 WL 7165109, at *2). The defendant asserts that the Iannelli court "emphasized that 'the defendant allegedly misrepresented "who" authorized the withdrawal of funds' and that '[s]uch misrepresentation is at the crux of the alleged bank fraud because **by whom** the signature on a check is authorized determines who is liable for the face amount of the check.'" Id. (citing Iannelli, 2023 WL 7165109, at *3) (emphasis the defendant's).

The defendant says that the allegations against her "do not align with the facts in *Ian[n]elli*." Dkt. No. 30 at 4. She says that she is "accused of submitting bills *from her own company* for services allegedly not provided." Id. (emphasis

12

in original). She argues that "[u]nlike in *Ian[n]elli*, where the defendant essentially posed as her parent company to issue herself checks, she did not use the patients' identities to submit the allegedly fraudulent bills." Id. The defendant argues that "*Ian[n]elli* and other cases like it do not require a finding that bills submitted for services not provided containing patient information, which the defendant was authorized to submit on behalf of her company, form the basis for aggravated identity theft charges." Id.

The defendant argues that "[t]he alleged conduct in Counts Eleven and Twelve goes to the 'how' or 'when' services were provided, which cannot constitute aggravated identify theft under Section 1028A." Id. She asserts that A.E. and J.J. were her clients and that while she "stands accused of not providing services to them," the indictment does not allege that she "us[ed] their identity to bill for services or to obtain a benefit for herself or others." Id. at 4-5. The defendant argues that the allegation that she never provided services for A.E. and J.J. "does not answer the question at the core of an aggravated identity theft claim post-*Dubin*: '*who* authorized the allegedly fraudulent billing?' Instead, the allegation answers the question: '*when* were services provided?' the answer being, never." Id. at 5.

The defendant contends that using an individual's means of identification to bill Medicaid for services that never happened cannot form the basis of aggravated identity theft because using an individual's identity in that way does not "center around the ordinary understanding of identity theft." Id. at 5 (citing Dubin, 599 U.S. at 120). She says that in Dubin, the Supreme

13

Court explained that "identity theft is committed when a defendant **uses the means of identification itself** to defraud or deceive" and that the "neighboring terms in the statute, 'transfers' and 'possesses,' 'connote theft.'" Id. (citing Dubin 599 U.S. at 125) (emphasis the defendant's). The defendant observes that the Dubin Court read Congress's use of "transfers" and "possesses" together with "using" in §1028A to "capture various aspects of 'classic identity theft,'" and argues that the application of §1028A in this context ignores that guidance. Id. (citing Dubin 599 U.S. at 126).

Finally, the defendant observes that the Dubin Court "emphasized that '[p]atient names or identifiers will, of course, be involved in the great majority of healthcare billing . . .' and that simply listing identifying patient information like names and Medicaid reimbursement numbers on a fraudulent billing statement cannot automatically be considered identity theft." Id. at 5-6 (quoting Dubin, 599 U.S. at 128). The defendant argues that the court should not "read[] incongruous breadth into [§1028A's] opaque language" "given the mandatory two-year minimum prison sentence Section 1028A carries." Id. at 6 (quoting Dubin 599 U.S. at 130).

b.     The Government's Response (Dkt. No. 31)

The government asserts that on their faces, Counts Eleven and Twelve state claims for aggravated identity fraud because they allege "that [the defendant] used J.J.'s and A.E.'s identifications to submit fraudulent bills claiming that services were provided to J.J. and A.E. on October 23 and November 9, 2020, respectively, when in fact no services were provided." Dkt.

14

No. 31 at 7. The government argues that "[t]hese allegations satisfy the elements of Section 1028A, which provides that a defendant commits aggravated identity theft when she 'knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person' during and in relation to certain enumerated offenses (including health care fraud)." Id. The government recounts that the Dubin Court explained "that 'when a means of identification is used deceptively' in connection with health care fraud, a defendant has violated Section 1028A because such a 'deception goes to the "who" is involved, rather than just the "how" or "when" services were provided.'" Id. at 7-8 (citing Dubin, 599 U.S. at 123). The government argues that "[i]n other words, Section 1028A applies whenever the 'means of identification' is 'integral to what makes the conduct fraudulent.'" Id. at 8 (citing Dubin, 599 U.S. at 117-18).

Turning to Judge Dries's recommendation, the government opines that Judge Dries correctly reasoned that "when a provider submits a claim to Medicaid, that conduct essentially represents to Medicaid that the client authorized the provider to seek payment on the client's behalf for services rendered." Id. (citing Dkt. No. 29 at 4). The government asserts that "[b]ecause no services, whatsoever, were provided on the dates identified in the Indictment, [the defendant's] use of J.J.'s and A.E.'s identifications to claim otherwise was necessarily at the 'crux' of the fraud." Id. (citing Dkt. No. 29 at 4). It argues, "[i]n other words, [the defendant's] use of these identities was

15

integral to her fraud—she needed the names and Medicaid numbers of pregnant women and new mothers in order to get paid." Id.

The government next turns to the defendant's claim that allegations of billing for a single fictitious visit are not sufficient to state a claim for aggravated identity theft "because 'billing for some dates on which services were provided among other dates on which services were provided' is akin to simple 'overbilling' that does not satisfy Section 1028A under *Dubin*." Id. at 8 (apparently quoting, but not citing, Dkt. No. 30 at 2-3). The government asserts that "[t]here are several flaws with this argument." Id. First, it argues that "the Indictment does not allege . . . that [the defendant] billed for one fictitious visit with J.J. and A.E. but provided covered, reimbursable services on other visits." Id. Second, it argues that the defendant essentially is contending "that it is not aggravated identity theft to use a person's identification to bill for a completely fictitious visit if, on another visit, reimbursable services were provided." Id. at 9. The government asserts that this argument is "illogical" and "would mean that, for example, a defendant doctor could see a patient one time to assess a sprained ankle, retain her identifying information to continue to bill for completely fictitious rehabilitation services for months or years, and evade charges of aggravated identity theft." Id. The government asserts that to argue that such conduct "constitutes the kind of 'garden variety overbilling' examined by *Dubin* is incorrect." Id. It contends that the "scheme in *Dubin* involved charging more than warranted for the service provided, but every billed incident in that scheme represented a service provided," and states that that is

16

"[o]verbilling, by definition." Id. The overbilling scheme in Dubin did not involve charging for services that *never* took place, as alleged in this case. Id.

Finally, the government says that contrary to the defendant's contentions, the indictment does not charge overbilling. The government says, "[t]he Indictment alleges that [the defendant] falsely stated in her bills that covered services were provided on specific dates, when no services whatsoever were provided [on those dates]." Id. at 9. The government argues that "[t]he caselaw makes clear these allegations sufficiently state a claim." Id. at 9-10 (citing United States v. Michael, 882 F.3d 624, 629 (6th Cir. 2018); United States v. Croft, 87 F.4th 644, 647 (5th Cir. 2023); United States v. O'Lear, 90 F.4th 519, 522 (6th Cir. 2024); United States v. Gladden, 78 F.4th 1232, 1245 (11th Cir. 2023)). According to the government, "the face of the Indictment alleges that [the defendant] 'used' the means of identification she obtained, via fraudulent pretenses, to lie to the government about *who* she was providing services to. The crux of her fraud—the thing about which she lied—was that she had provided services to the women whose identities she was using." Id. at 10 (emphasis in original). The government asserts that "[t]his is sufficient under *Dubin* to state claims for aggravated identity theft." Id.

The government addresses the defendant's argument that even if it is true that she never provided services to either J.J. or A.E. on any date, the court should dismiss Counts Eleven and Twelve. The government expresses confusion as to the defendant's point in distinguishing Iannelli. The government quotes the defendant's brief where she explained that, "[u]nlike in

17

*Iannelli*, where the defendant essentially posed as her parent company to issue herself checks, she did not use the patients' identities to submit the allegedly fraudulent bills." Id. at 11-12 (quoting Dkt. No. 30 at 4). The government says that it is "unclear what point this proves; if [the defendant] means to argue that because her company's name (rather than the patient's name) is the entity requesting payment on the fraudulent bill, it cannot constitute aggravated identity theft, there is nothing in the statute or caselaw to support her argument." Id. at 12.

The government responds to the defendant's argument "that an allegation of using a client's name and Medicaid number to bill for a fictitious visit does not speak to the relevant question of '*who* authorized the allegedly fraudulent billing?'" Id. at 12 (citing Dkt. No. 30 at 5). It argues that "[o]f course it does," and that "Judge Dries succinctly explained why: 'when a provider submits a claim to Medicaid, that conduct essentially represents to Medicaid that the client authorized the provider to seek payment on the client's behalf for services rendered.'" Id. (citing Dkt. No. 29 at 4). The government asserts that "[i]n this case, J.J. and A.E. did not (and could not have) authorized the billings because [the defendant] did not provide them *any* services on those billing dates." Id. The government says that because the defendant "submitted fraudulent bills using [J.J.'s and A.E.'s] identifying information to claim that they did [authorize the billings]," "the crux of [the defendant's] fraud was her fraudulent use of their identities to obtain payment." Id. The government recounts that "Judge Dries correctly found that Counts Eleven and Twelve

state claims for aggravated identity theft" and "[t]his Court should find the same and deny [the defendant's] motion to dismiss those counts." Id.

        3.    *Analysis*

The defendant raises three objections to Judge Dries's recommendation regarding Counts Eleven and Twelve. First, she suggests that Judge Dries relied on information outside the four corners of the indictment to conclude that Counts Eleven and Twelve state claims for aggravated identity theft under Dubin. Second, she argues that because the face of the indictment does not foreclose the possibility that at some point, she provided services to J.J. and A.E., the allegations in Counts Eleven and Twelve—that she billed Medicaid for services that she did not provide on two specific dates—essentially amount to overbilling allegations, which under Dubin cannot constitute underlying misconduct for a §1028A charge. Finally, she argues that Judge Dries relied on inapposite out-of-circuit caselaw and ignored key aspects of Dubin when reaching the allegedly erroneous conclusion that her use of J.J.'s and A.E.'s means of identification was at the heart of—instead of ancillary to—her alleged healthcare fraud.

In first objection, the defendant points out that the government's opposition brief included information not alleged in the indictment—specifically, information showing that she did not, at any point, provide covered services to J.J. and A.E. The defendant *suggests* (but does not outright assert) that Judge Dries relied on this evidence when finding that her use of A.E.'s and

J.J.'s identifying information was at "the crux" of the alleged fraud. Dkt. No. 30 at 1-2.

The government did proffer evidence outside the four corners of the indictment when arguing that the evidence at trial will support the aggravated identity theft counts. See Dkt. No. 24 at 9-15 (government's response brief); see also Dkt. Nos. 24-1, 24-2, 24-3 and 24-4 (government's attachments containing certain evidence not included in the indictment). Judge Dries acknowledged as much in a footnote at the outset of the recommendation, but declined to consider that evidence:

> The government contends that [the defendant] improperly attempts to support her motion to dismiss with evidence from outside the four corners of the indictment. ECF No. 24 at 9 n.3. "An indictment is reviewed on its face, regardless of the strength or weakness of the government's case." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam). Consistent with this principle, I do not find it necessary to look beyond the face of the indictment in resolving the motion to dismiss.

Dkt. No. 29 at 2 n.1.

Nor does the recommendation indicate that Judge Dries relied on that information when finding that the indictment states claims of aggravated identity theft under Dubin. Judge Dries cited and accurately paraphrased *the indictment*—not the government's evidence—when observing that "[t]he government accuses [the defendant] of bribing women with young children into sharing their means of identification by giving them baby gifts like car seats and diapers." Dkt. No. 29 at 3 (citing Dkt. No. 1 at 4); see also Dkt. No. 1 at 4, ¶3(a) ("[The defendant] often induced women to enroll [in her company's prenatal care and childcare programs] by offering free baby supplies such as

20

diapers, wipes, and strollers."). Judge Dries again cited and accurately paraphrased *the indictment* for the government's allegation that the defendant used the women's means of identification to "back-bill[] Medicaid for services she never provided." Id. (citing Dkt. No. 1 at 3-4); see also Dkt. No. 1 at 4-5, ¶3(e) (alleging that the defendant "instructed her employees to falsify billing submissions to Wisconsin Medicaid that knowingly misstated the duration, frequency, date, and nature of the services provided," and that she "submitted claims for payment to Medicaid based on false and fraudulent statements").[1]

Judge Dries found that these allegations, "[o]n their face . . . state a claim under *Dubin*." Dkt. No. 29 at 3. He reasoned that "when a provider submits a claim to Medicaid, that conduct essentially represents to Medicaid that the client authorized the provider to seek payment on the client's behalf for services rendered." Id. at 4. And "[b]ecause the government contends [the defendant's] clients never received services," Judge Dries concluded that the defendant's "use of their identifying information to claim otherwise is at the crux of the alleged fraud." Id. One could reasonably read Judge Dries's language, "the government contends [the defendant's] clients never received services," as referring to the new evidence proffered by the government—which, according to the government, dispels the notion that the defendant ever provided either J.J. or A.E with covered services. But because Judge Dries

---

[1] Judge Dries cited pages three through four of the indictment for the allegation that the defendant "back-billed Medicaid for services she never provided," dkt. no. 29 at 3—instead of pages four through five where those allegations appear, dkt. no. 1 at 4-5, ¶3(e). The court believes this was a typo.

never described or cited to that evidence in his report and recommendation—
and explicitly stated in the footnote that he was *not* looking beyond the four
corners of the indictment—it appears that Judge Dries was referring to the
indictment's allegations that the defendant (1) "instructed her employees to
falsify billing submissions to Wisconsin Medicaid that knowingly misstated the
duration, frequency, date, and nature of the services provided" and (2)
"submitted claims for payment to Medicaid based on false and fraudulent
statements," which he cited to and paraphrased on his report and
recommendation's previous page. Dkt. No. 29 at 3 (citing Dkt. No. 1 at 3-4).
Although these allegations don't explicitly state that the defendant back-billed
Medicaid for services she *never* provided, they can be reasonably construed to
allege as much. See Smith, 230 F.3d at 305 (explaining that courts review the
indictment on a practical basis and its entirety, rather than in a "hyper-
technical manner"). Because Judge Dries did not rely on information outside
the indictment in concluding that the indictment alleges that the defendant
back-billed Medicaid for services she *never* provided, the court will overrule the
defendant's first objection.

In her second objection, the defendant argues that because Counts
Eleven and Twelve allege that she billed Medicaid for services not provided to
clients on specific dates, but do not foreclose the possibility that she provided
covered services to the clients on other dates, those counts allege only that she
engaged in overbilling. She points out that under Dubin, allegations of
overbilling do not suffice to support a charge of aggravated identify theft.

22

The defendant reads into the indictment allegations it does not contain. Nowhere does the indictment allege that the defendant *ever* billed Medicaid for covered services actually provided to J.J. or A.E. Alleging that the defendant billed Medicaid for services she did not provide on a specific date does not equate to an allegation—or even imply—that the defendant billed Medicaid for services that *were* provided on a different date. Granted, the indictment does not allege that the defendant *never* billed Medicaid for services provided to J.J. or A.E. But the fact that the indictment does not allege that the defendant never billed Medicaid for services actually provided does not prove, or imply, that she did bill Medicaid for services actually provided.

Even if the indictment alleged that the defendant had sometimes billed Medicaid for dates on which services were provided to J.J. and A.E. and other times had billed for dates on which services were not provided to them, it is not clear that such allegations would constitute the type of "overbilling" that "the *Dubin* court determined should not give rise to aggravated identity theft charges." Dkt. No. 30 at 3. The Dubin court explained that overbilling occurs when someone "fraudulently inflate[s] the price of a service or good they actually provided." Dubin, 599 U.S. at 114. In Dubin, the defendant's patients received the services for which the defendant had billed Medicaid. Id. The defendant lied about the qualifications of the employee who provided the services so that he could inflate the amount he billed Medicaid, billing the

employee as a licensed psychologist when he was a licensed psychological associate. Id.[2]

The defendant's argument boils down to a claim that if a defendant bills Medicaid for providing services to Tom Smith on twenty occasions, when the defendant provided services to Tom Smith on only ten occasions, that defendant simply has overbilled for the services the defendant provided to Tom Smith—not stolen Tom Smith's identity.

As far as it goes, the defendant is correct that such a situation would result in "overbilling." But the argument ignores the specific allegations in Counts Eleven and Twelve. Count Eleven alleges that on or about January 26, 2021—a specific date on which the indictment alleges that the defendant provided no services to J.J.—the defendant used "without lawful authority" J.J.'s name, date of birth and Wisconsin Medicaid I.D. number to commit health care fraud. Dkt. No. 1 at 7. Count Twelve alleges that on or about March 22, 2023—a specific date on which the indictment alleges that the defendant provided no services to A.E.—the defendant knowingly used "without lawful authority" A.E.'s name, date of birth and Wisconsin Medicaid I.D. number to commit health care fraud. Id. at 8. Even if the defendant had permission to use J.J.'s identity to bill Medicaid for services she provided on some date other

_____

[2] The Dubin Court acknowledged in a footnote that in addition to arguing over whether overbilling a client by misstating services provided is offense conduct that can give rise to a §1028A charge, the parties also "dispute[d] whether changing the date [on which the examination occurred] affected the availability of Medicaid reimbursement." Dubin, 599 U.S. at 114 & n.1. But the Court decided "not to reach that question, as the outcome of th[e] case would be the same either way." Id. at n.1.

24

than January 26, 2021 (and again, the indictment does not allege that she did), Count Eleven specifically alleges that she did not have such permission, or authority, on January 26, 2021. She could not have billed—or, as the defendant attempts to characterize it, "overbilled"—Medicaid at all if she had not used J.J.'s identifying information without J.J.'s authorization. The same is true for the billing alleged in Count Twelve. Both counts allege that the defendant used the identity of another person to commit health care fraud (billing for services not rendered).

That leaves the defendant's final objection—that Judge Dries erred in concluding that using a client's means of identification to bill Medicaid for services never provided is misconduct that gives rise to aggravated identity theft under 18 U.S.C. §1028A. Judge Dries observed that the indictment "accuses [the defendant] of bribing women with young children into sharing their means of identification by giving them baby gifts like car seats and diapers" and "then back-bill[ing] Medicaid for services she never provided." Dkt. No. 29 at 3 (citing Dkt. No. 1 at 3-4). He found that the indictment need not allege that the defendant posed as a client or forged a client's signature for the allegations to give rise to aggravated identity theft, reasoning that the act of billing Medicaid "essentially represents to Medicaid that the client authorized the provider to seek payment on the client's behalf for services rendered." Id. at 4. Judge Dries concluded that because the indictment alleges that the defendant back-billed Medicaid for services she never provided to J.J. and A.E.,

the defendant's "use of their identifying information to claim otherwise is at the crux of the alleged fraud." Id. (citing Iannelli, 2023 WL 7165109, at *2).

Judge Dries observed that using a client's identifying information to bill Medicaid for services one didn't provide the client is akin to forging someone's signature to submit a fraudulent check to a bank. See Dkt. No. 29 at 3-4. To support this point, Judge Dries cited to the Massachusetts District Court's decision in Iannelli. The defendant argues that Judge Dries's reliance on Iannelli is misplaced because, "[u]nlike in *Ian[n]elli,* where the defendant essentially posed as her parent company to issue herself checks, [the defendant here] did not use the patients' identities to submit the allegedly fraudulent bills." Dkt. No. 30 at 4. The argument misses Judge Dries's point in citing the case. Iannelli is neither factually on-point nor binding, and Judge Dries didn't say that it was. He cited Iannelli to illustrate his point that using a client's identifying information to submit a claim to Medicaid is like using someone else's signature to write oneself a check because, in both instances, one is fraudulently representing to an institution (the government in the former scenario, the bank in the latter) that the person has authorized one to receive payment. In Iannelli, the employee was authorized to use the employer's signature stamp to issue authorized checks, but not to represent to a bank that her employer had written her a particular check. Here, it appears that the defendant may have been authorized to use the clients' means of identification to bill Medicaid for services she provided, but not to bill Medicaid for services she didn't provide. Judge Dries's citation to Iannelli is instructive—not

26

misplaced. Perhaps more to the point, it was—while helpful—unnecessary to his determination. He did not base his recommendation on Iannelli. He based his decision on his own reasoning that when the defendant used J.J.'s and A.E.'s identifying information to seek payment for services she had not provided them, her use of their identifying information was central to the fraud.

The defendant reads the indictment to allege that she "stands accused of not providing services to [A.E. and J.J.], not using their identit[ies] to bill for services or to obtain a benefit for herself or others." Dkt. No. 30 at 4-5. She maintains that allegations she used a client's means of identification to bill for services that didn't happen doesn't answer the relevant post-Dubin question of "*who* authorized the fraudulent billing?" Id. at 5. But as Judge Dries observed, "submit[ing] a claim to Medicaid . . . essentially represents to Medicaid that *the client authorized* the provider to seek payment on the client's behalf for services rendered." Dkt. No. 29 at 4 (emphasis added). By using J.J.'s and A.E.'s means of identification to bill Medicaid for services she didn't provide them, the defendant represented to Medicaid that J.J. and A.E. authorized the fraudulent billing.

These allegations support a charge of aggravated identity theft under Dubin. In Dubin, the defendant's use of the client's means of identification to bill Medicaid was *ancillary* to the fraud—not the *crux* of the fraud—because the client received the services described in the billing, from the provider identified in the billing. In other words, because the client had received the services described, the client effectively had authorized the defendant to use his name

27

to claim payment for those services. See Dubin, 599 U.S. at 132. "The crux of [Dubin's] healthcare fraud was a misrepresentation [to Medicaid] about the qualifications of [Dubin's] employee" to inflate his billing to Medicaid. Id. "The patient's name," on the other hand, "was an ancillary feature of the billing method employed." Id.

Here, the defendant is alleged to have used J.J.'s and A.E.'s means of identification to represent to Medicaid that those clients had received services on specific dates when, in fact, the clients had not received services on the dates indicated (and possibly not at all). Dkt. No. 1 at 4-8. The defendant's use of J.J.'s and A.E.'s means of identification is at the crux of the defendant's alleged healthcare fraud because she effectively represented to Medicaid that the clients authorized her to seek payment for services rendered on a specific date, when they had not received services on that date and, thus, had not authorized her to receive a related payment. Dubin—and caselaw from other circuits—confirms that such allegations are sufficient to state a claim for aggravated identity theft. Michael, 882 F.3d at 629 (explaining that a defendant's use of client's "identifying information to fashion a fraudulent submission out of whole cloth, mak[es] the misuse of these means of identification 'during and in relation to'—indeed integral to—the predicate act of healthcare fraud").

28

The defendant argues that Judge Dries's recommendation "ignored the tenants[3] of the *Dubin* ruling" in finding that her "conduct was at the heart of the alleged fraudulent conduct instead of ancillary to it." Dkt. No. 30 at 6. That simply is not true. Judge Dries succinctly walked through the holding in Dubin, then distinguished the defendant's conduct and explained how the complaint stated a claim under Dubin.

Regardless of the reasoning Judge Dries employed, the defendant's argument fails because she could not have committed the health care fraud alleged in Counts One and Three without using J.J.'s and A.E.'s identifying information. She could not have convinced the government to reimburse her for services she didn't provide without misrepresenting to the government that on the dates she listed, she'd provided those services to someone. Medicaid would not have paid the claim if she'd simply said that she provided services on January 26, 2021, without identifying the clients to whom she allegedly provided the services. She had to give names and identifying information to commit the fraud, but she used the names and identifying information of people who had not received services from her on those dates. Contrast that with Dubin. If Dubin had submitted a claim in the patient's name for services provided by the named provider, but had correctly described the provider's position and correlating billing rate, he would not have committed fraud. The lie necessary to his fraud was about the provider's qualifications/position,

---

[3] The court suspects the defendant meant to argue that Judge Dries ignored the "tenets" of Dubin.

which did not require him to use someone's identifiers without their authorization.

The court will overrule the defendant's objection and will deny the motion to dismiss Counts Eleven and Twelve.

B.     Count Nineteen

1.     *Background*

a.     The Allegations (Dkt. No. 1)

Count Nineteen provides that "[b]etween on or about December 2021 and August 2022," the defendant

> willfully attempted to prevent, obstruct, mislead, and delay the communication of information and records relating to the scheme outlined above, a violation of a federal health care offense, by instructing her care coordinators to "remind" their clients that they provided resources and to tell investigators, including a criminal investigator duly authorized by the Federal Bureau of Investigation, an agency of the United States, to conduct and engage in investigations for prosecutions for violations of health care offenses, that the information on the progress notes used to support billing Medicaid was true.

In violation of Title 18, United States Code, Section 1518.

Dkt. No. 1 at 15.

b.     Defendant's Proffered Discovery (Dkt. Nos. 20-3, 20-4)

To support her argument that Count Nineteen should be dismissed on duplicity grounds, the defendant refers to two statements taken by the FBI from former HFY employees, which she received in discovery and attached to her motion to dismiss. Dkt. Nos. 20 at 5-6 (summarizing statements); 20-3 (statement of S.W.); 20-4 (statement of S.M.). According to the defendant,

30

[t]here is currently evidence of two distinct conversations between [the defendant] and her employees regarding a potential investigation, with two former HFY care coordinators: S.W. and S.M. In an interview with FBI investigators in an interview on February 27, 2023, S.W. told FBI investigators that [the defendant] called her at 3 AM on the day after the search warrant on HFY was executed, which was November 18, 2021. (Exhibit 3 – Summary of Interview with S.W. at 2). [The defendant] told S.W. that she should tell investigators she "provided resources" to moms and that the main issue with respect to the investigation was that they were handing out items, which they were not supposed to do. *Id.*

S.M. also spoke with FBI investigators on April 14, 2023, and told them that [the defendant] had told her and other care coordinators "not to date documents so that she could back bill." (Exhibit 4 – Summary of Interview with S.M. at 4). [S.M.] told investigators that [the defendant] gave her and the care coordinators that direction when she learned about the opening of a state investigation. *Id.* According to S.M., [the defendant] said that the investigation was "not serious" and told the care coordinators not to say anything that would incriminate them. *Id.* at 4-5. S.M. said that [the defendant] did not specify what care coordinators should or should not say, but S.M. interpreted her statement as a direction not to talk about instances where [the defendant] told them what to put or not to put on their progress notes. *Id.* S.M. also remembered [the defendant] telling them to call their clients and remind them that HFY was a "resource agency,["] which led to S.M. calling her clients. *Id.*

Dkt. No. 20 at 5-6.

c.      Judge Dries's Recommendation (Dkt. No. 29)

Judge Dries recounted that the defendant "argues that Count Nineteen is duplicitous because the government relies on statements from two employees about different ways in which [she] encouraged them to cause former clients to lie to investigators." Dkt. No. 29 at 4 (citing Dkt. No. 20 at 12-13). He observed that the defendant "claims the differences in these employees' statements constitute two distinct offenses." Id. (citing Dkt. No. 20 at 12-13). Judge Dries recounted that "[t]he government maintains that Count Nineteen permissibly

31

charges the commission of a single offense—obstructing a health care fraud investigation by instructing employees to furnish false information to investigators." Id. (citing Dkt. No. 24 at 21).

Judge Dries explained the standard for determining whether a charged count is duplicitous:

> "A charged count is 'duplicitous if it charges two or more distinct offenses within the count.'" *United States v. Rogers*, 44 F.4th 728, 736 (7th Cir. 2022) (quoting *United States v. O'Brien*, 953 F.3d 449, 454 (7th Cir. 2020)). "A count is not duplicitous, however, if it charges the commission of a single offense through different means." *O'Brien*, 953 F.3d at 454 (citing Fed. R. Crim. P. 7(c)(1)). "This rule necessarily contemplates that two or more acts, each one of which would constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity." *United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982) (citing *United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978)). "The dangers posed by a duplicitous indictment include the possibility that the defendant may not be adequately notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings at trial, and that he may be convicted by a less than unanimous verdict." *Id.* at 899.

Dkt. No. 29 at 4-5.

Judge Dries observed that the defendant's "duplicity argument may be thwarted altogether by interpreting the employee conversations as a continuing course of conduct." Dkt. No. 29 at 5 (citing United States v. Davis, 471 F.3d 783, 790 (7th Cir. 2006)). He asserted that "even if the conversations are distinct enough to constitute commission of a crime by two different means, any unanimity concerns can be resolved with appropriate jury instructions and/or a special verdict form." Id. (citing Dkt. No. 24 at 21; United States v. Starks, 472 F.3d 466, 470-71 (7th Cir. 2006)). Judge Dries observed that the

32

defendant "has not explained why those remedies would be inadequate." Id. Judge Dries noted that while the defendant "claims that the government ignores the distinct characteristics between the alleged conversations—alleging they lack a common underlying motive[,]" "this argument "delves far beyond the face of the indictment." Id. (citing White, 610 F.3d 956).

    2. *Parties' Arguments*

      a. Defendant's Objections (Dkt. No. 30)

  The defendant maintains that "[t]here are two distinct offenses within the single count of Obstruction of a Healthcare Fraud Investigation based on evidence regarding FBI investigators' conversations with former care coordinators." Dkt. No. 30 at 6. She asserts that "the distinct conversations do not constitute a continuing course of conduct." Id.

  The defendant explains that "[t]he women described several key differences in their alleged conversations with [her] regarding the open investigation that make the alleged conduct duplicitous." Dkt. No. 30 at 6. She recounts that "one [employee] remembers talking to [the defendant] on a specific date while another does not recall when exactly the conversation took place." Id. Another difference pointed out by the defendant is that "[o]ne [employee] said that [the defendant] addressed a group of care coordinators, while [the defendant] spoke with the other [employee] on a private call." Id. And "[t]he content of those conversations also differed; while both women were told to speak with their clients about HFY being a resource agency, one was told specifically to speak with her clients about the fact that HFY provided services

33

Case 2:23-cr-00113-PP   Filed 07/15/24   Page 33 of 38   Document 33

and not items under the premise that it was impermissible for the company to give out items." Id. at 6-7. Finally, the defendant notes that while "one [employee] did not recall [the defendant] providing any specific details [about what to say to investigators], . . . the other recalls [the defendant] telling her not to share with investigators that HFY did provide items." Id. at 7. "The defendant concludes, "Count Nineteen is duplicitous. It must be remedied through either dismissal or through jury instructions." Id.

      b.     The Government's Response (Dkt. No. 31)

The government asserts that the defendant's objection "repeats the same argument for dismissal of Count Nineteen"—and in doing so, "cites no caselaw . . . and fails to engage with the cases the Report cites." Dkt. No. 31 at 13. The government also points out that the defendant "concedes that any duplicity concerns could be remedied by appropriate jury instructions." Id. (citing Dkt. No. 30 at 7).

According to the government, "[t]he Indictment alleges that [the defendant] engaged in a continuing scheme of obstruction over the course of roughly nine months, during which she instructed her employees . . . to attempt to thwart the government's investigation of her fraud." Id. Citing to the Seventh Circuit's decision in Davis, the government asserts that "a charge is not duplicitous where it alleges the violation of a single statute and sets out an ongoing and continuous course of conduct, accomplished through different methods, that were repeated on numerous occasions over time, involving only one defendant." Id. (citing Davis, 471 F.3d at 791). The government says that

34

this "is precisely how Count Nineteen is alleged," and the fact "[t]hat more than one person has evidence of the defendant's obstruction does not transform the obstruction into multiple crimes." Id.

The government next argues that "[e]ven if it is true that each of [the defendant's] conversations with separate employees could constitute an independent obstruction charge, it was within the government's discretion to charge her whole course of obstructive conduct as one offense." Id. at 13-14 (citing Berardi, 675 F.2d at 898). It observes that the Berardi court "acknowledged that three acts of obstruction described in one count of the indictment could have constituted independent violations and been charged in separate counts" and that "[h]ad the government taken that route, the defendant 'would have been subjected to multiple statutory penalties.'" Id. at 14 (quoting Berardi, 675 F.2d at 898). It states "[t]hat the government [in Berardi] declined the opportunity to cumulate those punishments did not transform what was fairly interpreted as a continuing course of obstructive conduct, during a discrete period of time, into an impermissibly duplicitous charge. The same is true here." Id. (citing Berardi, 675 F.2d at 898).

The government concludes that "Count Nineteen is proper as alleged," and "as Judge Dries noted and [the defendant] does not dispute, even if [the defendant's] instructions to her employees were distinct enough to constitute commission of a crime by different means, any unanimity concerns can be resolved with appropriate jury instructions and/or a special verdict form." Id.

at 14 (citing Dkt. No. 29 at 5). For those reasons, the government asserts that "[d]ismissal is simply not appropriate." Id.

### 3. *Analysis*

Judge Dries observed in his report and recommendation that the defendant's alleged conduct, reported by two of her former employees during conversations with the FBI, may be interpreted as a continuing course of conduct, in which case, "[her] duplicity argument may be thwarted altogether." Dkt. No. 29 at 5 (citing Davis, 471 F.3d at 790). The defendant objects, maintaining that the conversations are "distinct." But the defendant does not address the caselaw that Judge Dries cited in the report and recommendation. Dkt. No. 30 at 6-7. The indictment in Davis alleged a single count of healthcare fraud carried out through three separate schemes. Davis, 471 F.3d at 790. The Seventh Circuit observed that while "an indictment can be duplicitous if numerous discrete instances of criminal conduct are lumped into a single count," "[w]here the indictment . . . alleges a 'continuing course of conduct, during a discrete period of time,' the indictment is not prejudicially duplicitous." Id. at 790-91 (citing United States v. Tanner, 471 F.2d 128, 138-39 (7th Cir. 1972); Berardi, 675 F.2d at 898). The court concluded that the indictment was not duplicitous because it "set[] out an ongoing and continuous course of conduct, accomplished through three different methods, that were repeated on numerous (likely daily) occasions over several years," and "the crime charged . . . was fairly straightforward, involved only one defendant, one victim, and one criminal statute." Id. at 791.

36

The defendant identifies differences between the two employees' statements to the FBI. She points out that one employee describes the defendant instructing her on what to say to investigators as a part of a group, while the other employee remembers her instructions coming in a private call. The defendant also asserts that although both women purportedly described her instructing them to call HFY a "resource agency," only one of the women remembers being told to tell clients that HFY provides resources and not items. The defendant picks nits; the indictment alleges that over about nine months, the defendant instructed "care coordinators" to "remind" their clients that they had provided resources (read: told them to lie) and to tell investigators that information on progress notes was true. The defendant may have made two different statements to two different care coordinators; she may have made five or six or ten during the relevant period. Count Nineteen charges one defendant with a continuing course of conduct under a single statute—18 U.S.C. §1518. Count Nineteen is not duplicitous.

Judge Dries pointed out that even if the conversations were so distinct as to be fairly understood as charging the commission of a crime by two different means, "any unanimity concerns can be resolved with appropriate jury instructions and/or a special verdict form"—and that the defendant "has not explained why those remedies would be inadequate." Dkt. No. 29 at 5. The defendant since has acknowledged that her duplicity concerns—if warranted-- could be remedied through jury instructions. Dkt. No. 30 at 7. If the evidence comes in at trial in a way that alters the court's view and duplicity concerns

arise, the court and the parties can tailor jury instructions to remedy the issue. The court will adopt Judge Dries's recommendation and deny the defendant's motion to dismiss Count Nineteen.

## IV. Conclusion

The court **OVERRULES** the defendant's objections to Judge Dries's report and recommendation. Dkt. No. 30.

The court **ADOPTS** Judge Dries's recommendation. Dkt. No. 29.

The court **DENIES** the defendant's motion to dismiss Counts Eleven, Twelve and Nineteen. Dkt. No. 20.

The court will separately communicate with the parties regarding the next steps in the litigation.

Dated in Milwaukee, Wisconsin this 15th day of July, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**